UNITED STATES DISTRICT COURT
FOR THE NORTHISN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MONIQUE HUMPHREY,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | Case No.: 2:24-cv-423-ACA |
| ] | |
| **EQUIFAX INFORMATION** ] | |
| **SERVICES, LLC, et al.** ] | |
| ] | |
| **Defendants.** ] | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Monique Humphrey alleges that Defendants Equifax Information Services, LLC; Experian Information Solutions, Inc.; Trans Union, LLC; and Fair Collections and Outsourcing, Inc. violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681e(b), 1681i, 1681s-2(b). (Doc. 1). The court dismissed Ms. Humphrey's claims against Trans Union and Equifax under Federal Rule of Civil Procedure 41(a)(2). (Doc. 53). Ms. Humphrey's claims against Experian and Fair Collections remain.

Experian moves to compel arbitration on the grounds that Ms. Humphrey agreed to terms of use on an affiliate's website that included an arbitration agreement, binding Ms. Humphrey to arbitrate claims against not only that affiliate but also Experian. (Doc. 45). Because the court finds no genuine dispute of material

fact exists as to Ms. Humphrey's assent to the arbitration agreement, the court **GRANTS** Experian's motion to compel arbitration.

### I.     BACKGROUND

The court evaluates a motion to compel arbitration using "a summary-judgment-like standard." *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). The court examines the evidence presented to determine whether there is a genuine dispute of material fact concerning the formation of an arbitration agreement. *Id.* Therefore, the court's description of the facts will incorporate evidence submitted to the court outside of the pleadings. Because the court has dismissed Equifax and Trans Union as defendants (doc. 53), the facts below will focus on the remaining defendants, Experian and Fair Collections.

Experian is a consumer reporting agency. (Doc. 1 ¶ 19). At some point, Ms. Humphrey signed up for credit monitoring services. (*See* doc. 50-2 ¶¶ 6–7). Experian.com is one website affiliated with "Experian Consumer Services," which also does business as ConsumerInfo.com, Inc. (*See* doc. 45-1 at 2 ¶ 1, 14). ConsumerInfo.com's director of product operations, Dan Smith, attests that Ms. Humphrey's membership was to a service called "CreditWorks." (*Id.* at 4 ¶ 3). He does not have a copy of her specific enrollment forms but attests that when Ms. Humphrey enrolled in CreditWorks online, she had to complete a form that links to the terms of use agreement. (*Id.* at 3 ¶¶ 3–4). The terms of use agreement in use

when Ms. Humphrey signed up for CreditWorks provided that the enrollee agreed to arbitrate "all disputes and claims between [the enrollee, Experian Consumer Services, and its affiliates, including Experian] that arise out of, or relate to, her CreditWorks agreement, including claims under the Fair Credit Reporting Act." (Doc. 45 at 5–6) (quotation marks omitted). Ms. Humphrey attests that she has never heard of CreditWorks and never saw an arbitration agreement when she signed up for credit monitoring. (Doc. 50-2 ¶¶ 9–10). She does not deny, however, that the credit monitoring service she signed up for was CreditWorks. (*See generally* doc. 50-2).

Sometime after November 2020, Fair Collections, "a national rental housing debt collections agency," reported to Experian a debt that Ms. Humphrey maintains she never owed. (Doc. 1 ¶ 22, 50–62, 70). Experian then reported this false debt to Ms. Humphrey's credit file. (*Id.* ¶ 71). The false collection account "made it practically impossible for [Ms. Humphrey] to continue to obtain credit," and resulted in denials of various housing applications, and near denials of a car purchase and loans. (*Id.* ¶¶ 65, 127–36). Ms. Humphrey repeatedly requested that Experian reinvestigate the disputed information with Fair Collections and correct her credit report." (*Id.* ¶¶ 75, 81, 113). But Experian failed to conduct a reasonable reinvestigation. (Doc. 1 ¶¶ 81–85, 116–20). Ms. Humphrey filed suit asserting that Experian and Fair Collections failed to follow reasonable procedures to assure

maximum possible accuracy and failed to conduct reasonable reinvestigations, among other claims under FCRA. (*Id.* at 22–26).

## II. DISCUSSION

Experian moves to compel arbitration under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, on the ground that the arbitration agreement in CreditWorks's terms of use, to which Ms. Humphrey was required to agree in order to enroll in CreditWorks, binds her to arbitrate her claims against Experian. (Doc. 45 at 5–6).

The FAA applies to all "contract[s] evidencing a transaction involving interstate commerce." 9 U.S.C. § 2. A written agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* In determining whether parties agreed to arbitrate a particular dispute, the court considers whether "(a) the plaintiff entered into a written arbitration agreement that is enforceable under ordinary state-law contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008).

The parties dispute only whether an enforceable arbitration agreement exists. (*See* doc. 45 at 11–19; doc. 10–24). "The threshold question of whether an arbitration agreement exists at all is simply a matter of contract." *Bazemore*, 827 F.3d at 1329 (quotation marks omitted). And the Eleventh Circuit "has [repeatedly] emphasized

that state law generally governs whether an enforceable contract or agreement to arbitrate exists." *Id.* (quotation marks omitted). The court will therefore look to Alabama law to determine whether the evidence provided supports the existence of a valid arbitration agreement. "After a motion to compel arbitration has been made and supported, the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." *Moore-Dennis v. Franklin*, 201 So. 3d 1131, 1137 (Ala. 2016) (quotation marks omitted; alteration accepted).

Experian seeks to compel arbitration. (Doc. 45). Ms. Humphrey challenges the motion on the grounds that (1) Mr. Smith's affidavit is not admissible because he lacks personal knowledge of the facts therein, and (2) his affidavit fails to demonstrate that she assented to the arbitration agreement. (Doc. 50). The court will consider each argument in turn.

### 1.    Mr. Smith's Affidavit Is Admissible

First, Ms. Humphrey argues that Mr. Smith's affidavit is inadmissible on the grounds that he lacks personal knowledge that Ms. Humphrey accepted the terms and conditions, including the arbitration agreement, when she signed up for credit monitoring. (Doc. 50 at 10–19). She contends that Mr. Smith's affidavit amounts to mere speculation about what she must have done. (*Id.* at 12–13). And she criticizes

Experian's refusal to provide the documents Mr. Smith relied on in attesting that Ms. Humphrey must have agreed to the arbitration agreement. (*Id.* at 15–16).

Because motions to compel arbitration are analyzed like motions for summary judgment, *Bazemore*, 827 F.3d at 1333, Federal Rule of Civil Procedure 56 applies. Rule 56(c)(4) states that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see also* Fed. R. Evid. 602.

The court is not persuaded that Mr. Smith lacks personal knowledge to attest to the facts in his affidavit. Mr. Smith, as Director of Product Operations for ConsumerInfo.com, explains that his duties require him to be familiar with "how consumers enroll, the forms they must complete to enroll," the terms of use, and "Experian's electronic databases that store consumer enrollment information, including the webpages a consumer would have encountered to complete their enrollment into CreditWorks." (Doc. 45-1 at 2 ¶ 1).

Moreover, Mr. Smith has access to Ms. Humphrey's membership data and verified that Ms. Humphrey enrolled on February 23, 2018. (*Id.* at 4). He states that through his personal experience as Director of Product Operations (*see id.* at 3), he knows that Ms. Humphrey "would not have been able to successfully enroll in CreditWorks unless she clicked th[e] button" accepting and agreeing to the terms of

6

use (*id.* at 5). Mr. Smith thus adequately lays a foundation for his personal knowledge of these facts, even if he did not physically witness Ms. Humphrey accept the terms of use.

Upon reviewing the briefs, it appears that Ms. Humphrey does not object to Mr. Smith's personal knowledge of these facts, but to the inference that Experian asks the court to draw from them: that Ms. Humphrey agreed to the arbitration clause by accepting the terms of use when she enrolled in credit monitoring services. Under a summary judgment-like standard, the court may review the evidence and "draw all reasonable inferences in the nonmoving party's favor." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1307 (11th Cir. 2023). But as the court will discuss below, the only inference to be drawn is that Ms. Humphrey did accept the terms of use because the undisputed evidence establishes that she enrolled in CreditWorks and would have had to accept the terms of use to complete her enrollment.

    2.   No Genuine Dispute of Material Fact Exists as to Whether Ms. Humphrey Assented to the Arbitration Agreement

Second, Ms. Humphrey contends that the arbitration agreement is invalid and unenforceable as it lacked mutual assent. (Doc. 50 at 20–24). She argues that ConsumerInfo.com's "clickwrap" terms of use agreement intended to "lure" her into binding arbitration terms by not requiring her "to first click on the box containing the arbitration agreement" or "scroll down to view the complete contents." (*Id.* at 21–22). And she states in her affidavit that "she did not see an arbitration agreement,

or any mention of an arbitration agreement, when [she] signed up for credit monitoring." (Doc. 50-2 at 3).

Under Alabama law, the elements of a valid contract include offer, acceptance, consideration, and mutual assent. *Ex parte Riverfront, LLC*, 129 So. 3d 1008, 1013 (Ala. 2013). A party may demonstrate mutual assent by presenting a signature on a contract, or "other external and objective manifestations of mutual assent." *I.C.E. Contractors, Inc. v. Martin & Cobey Const. Co.*, 58 So. 3d 723, 726 (Ala. 2010). Although mutual assent is a necessary element of any contract, the Alabama Supreme Court has held that mutual assent is not destroyed if parties to the contract do not choose to read the contract terms. *See First Fam. Fin. Servs., Inc. v. Rogers*, 736 So. 2d 553, 558 (Ala. 1999). In *First Family*, the Court held that the plaintiffs were bound to an arbitration agreement, despite not reading and/or understanding the arbitration agreement within the contract they signed, because they were "competent adult[s], having the ability to read and understand the instrument" and did not present "evidence that [they] were denied the opportunity to read the document or that they were otherwise tricked into signing it." *Id.*

Although Ms. Humphrey argues that Experian tricked her by embedding the arbitration agreement within a hyperlink along with other terms of use (*see* doc. 50 at 22–23), Ms. Humphrey does not assert that Experian or its affiliates affirmatively misrepresented the arbitration clause or prevented her from reading the arbitration

clause (*see generally id.*). The court does not consider Experian's unwillingness to call Ms. Humphrey's attention to the arbitration agreement, (doc. 50 at 20–24), the same kind of trickery that the Alabama Supreme Court shows concern for in *First Family*. Like the plaintiffs there, no evidence demonstrates that Ms. Humphrey "could not have understood what [she] was signing if [she] had taken the time to read the document." *First Family*, 736 So. 2d at 558.

 Finally, Ms. Humphrey only states in her affidavit that she did not <u>see</u> the arbitration agreement, not that she did not <u>agree</u> to it. (*See* doc. 50-2 at 3) (emphasis added). This declaration is in stark contrast to her following statement: that she "did not click on anything that notified [her] that" she would waive her right to a jury. (*Id.*). Whereas Ms. Humphrey denies that she agreed to waive her right to a jury, she does not deny clicking on an agreement to arbitrate her claims. The only reasonable inference to draw from her statements is that she does not dispute that she clicked on, or agreed to, the arbitration agreement she now contests.

 Therefore, Ms. Humphrey's evidence does not raise a genuine dispute of material fact as to whether she assented to the arbitration agreement. Her evidence only raises a genuine dispute of material fact as to whether she read it. And absent evidence that she was incapable of reading the agreement, she has not disputed that she agreed to the arbitration clause.

## III.  CONCLUSION

Based on the affidavits from Ms. Humphrey and Mr. Smith, the court finds that no genuine dispute of material fact exists as to whether Ms. Humphrey assented to the arbitration agreement contained in CreditWorks's terms of use. Accordingly, the court **GRANTS** Experian's motion to compel arbitration without considering its additional arguments. The court **STAYS** Ms. Humphrey's claims against Experian pending arbitration. Ms. Humphrey's claims against Fair Collections shall proceed.

**DONE** and **ORDERED** this December 30, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE